DONALD E. LAWES, AS EXECUTOR OF THE LAST WILL
AND TESTAMENT OF MABEL L. JONES, DECEASED,
PLAINTIFF-RESPONDENT, v. KATE D. LYNCH AND
FRANK F. WHITFIELD, AS SUBSTITUTED ADMINIS-
TRATORS, ETC., DEFENDANTS-APPELLANTS.

Argued November 6, 1950—Decided December 4, 1950.

(1)

4

*Mr. Harry Kalisch* argued the cause for the appellants (*Messrs. Kalisch & Kalisch,* attorneys).

*Mrs. Ida K. Hildebrand* argued the cause for the respondent (*Messrs. Applegate, Foster, Reussille & Cornwell,* attorneys).

The opinion of the court was delivered by

BURLING, J.  This appeal by the defendants from a judgment of the Superior Court, Chancery Division, Monmouth County, is addressed to the Appellate Division of the Superior Court but has been certified on our own motion.

A complaint was filed by the plaintiff seeking a judicial construction of the will of Evan F. Jones. An answer was filed by the defendants and the matter was submitted to the trial court for decision upon the pleadings and a stipulation of facts. The pertinent facts are that Evan F. Jones died testate on April 6, 1935. By his will, executed in 1898, he gave a specific legacy of $5,000 and a life estate in the residue of his estate to his wife, Mabel L. Jones, all in lieu of dower, and named his wife as executrix. The will provided that the remainder of his estate should pass to his children, if any, upon the death of his wife, the representative of any deceased child to take the parent's share. The will further provided that in the absence of any children, then upon the death of the wife, the remainder of the estate should pass "unto Ella Whitfield, my sister, Kate D. Jones, my sister, and Lewis D. Jones, my father, to be divided equally among them to them and their heirs and assigns forever." The testator left no children or representatives of any deceased child. His father, Lewis D. Jones, predeceased the testator, having died in 1906. Mabel L. Jones, the widow, and the two named sisters survived the testator. The testator's will was admitted to probate and his widow qualified as executrix thereunder. The estate consisted of personalty and one parcel of real estate of which the testator became seised during coverture. The widow took possession of the $5,000 legacy for her own use and enjoyed the life estate given to her under her husband's will until her death on August 5, 1946. She died testate and under the terms of her will the plaintiff, Donald E. Lawes, was named as executor. Her will was admitted to probate on August 19, 1946, and letters testamentary were issued to the plaintiff as executor. On January 20, 1947, letters of substituted administration with the will annexed were issued by the Monmouth County Orphans' Court to the defendants, Kate D. Lynch and Frank F. Whitfield, to complete the administration of the estate of Evan F. Jones.

The question submitted to the trial court was whether the will gave the residuary estate in remainder to Ella Whitfield,

Kate D. Jones and Lewis D. Jones, severally as tenants in common or as a class with a right of survivorship. The trial court decided that the gifts were several; that upon the death of Lewis D. Jones during the life of the testator, the gift to him lapsed with a resulting partial intestacy; that the testator died intestate as to one third of the residuary estate; that the widow, Mabel L. Jones, as heir at law and next of kin, was entitled thereto under the statutes of distribution and descent; that the widow had neither estopped herself from asserting her right thereto, nor had she waived such right; and that accordingly, the plaintiff, as executor of the estate of Mabel L. Jones was entitled to one third of the residuary estate with respect to which the testator, Evan F. Jones, died intestate. Judgment was entered accordingly on May 3, 1950. The present appeal is from that judgment.

The problems presented for our consideration are essentially the same as those submitted to the trial court. They involve the application of legal principles to stipulated facts.

One of the primary considerations in the judicial construction of a will is to ascertain the intention of the testator. Such intent is to be gathered from the context of the will in the light of the circumstances existing at the time of the will's execution. *In re Fox,* 4 *N. J.* 587 (1950). In our quest of this objective in the present case we are furnished with various established guide posts to which resort is made. Our immediate problem is to determine whether the language of the testator's will created a class gift or gifts in severalty. What are the guide posts? A gift to a class has been defined in this State "as a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the actual number." *Rippel v. King,* 126 *N. J. Eq.* 297, 299 (*Ch.* 1939); affirmed on opinion below, 128 *N. J. Eq.* 179 (*E. & A.* 1940). See also *Clapp, New Jersey Practice, Vol. 5, Wills and Administration* (1950), § 181, *p.* 428, and cases therein cited. This defini-

tion has been frequently quoted with approval. 75 *A. L. R.* 777; *Page on Wills* (3rd ed. 1941), *Vol.* 3, §1046, *p.* 196. Obviously the language of the testator's will does not come within the above definition of a class gift. Here the gift was to a definite number of persons *nominatum*. The rule to be deduced from the cases is that where a gift is to named persons, although they may constitute a class, a presumption arises that the intention of the testator was to make a gift to the named persons in severalty and not as a class. *Rippel v. King, supra; Brown v. Fidelity Union Trust Co.,* 134 *N. J. Eq.* 217 (*Ch.* 1943); affirmed, 135 *N. J. Eq.* 461 (*E. & A.* 1944); *Dildine v. Dildine,* 32 *N. J. Eq.* 78 (*Ch.* 1880); *Hand v. Marcy,* 28 *N. J. Eq.* 59 (*Ch.* 1877); *Clapp, supra,* § 181; *Page, supra,* § 1049, *p.* 204; 105 *A. L. R.* 1396. A corollary of the rule, as pointed out in the same authorities, is that if it appears from the entire context of the will that the testator intended that the persons so named should take as a class, rather than as individuals, such a construction will be accorded to effectuate the testator's intention.

Another guide post which has been erected as an aid to us in resolving the problem herewith presented is that while the use of words which indicate a tenancy in common, such as "share and share alike," "to be divided equally" and the like, are not necessarily inconsistent with a gift to a class, *Clapp, supra,* § 181, *p.* 431; *Page, supra,* § 1050, *p.* 208, where such words stand alone in a will a gift in severalty with all donees taking as tenants in common is created. See *Shearin v. Allen,* 137 *N. J. Eq.* 276 (*E. & A.* 1945). It is also well established that where a legacy is to a named person "and his heirs" the word "heirs" is construed to be a word of limitation and not of substitution and does not prevent the lapse of the gift upon the death of the donee in the testator's lifetime, unless an intention to make a substitution can be gathered from other language of the will. See *Zabriskie v. Huyler,* 62 *N. J. Eq.* 697 (*Ch.* 1901); affirmed, 64 *N. J. Eq.* 794 (*E. & A.* 1902); *King v. King,* 125 *N. J. Eq.* 94 (*E. & A.* 1938); 57 *Am. Jur., Wills,* § 1430, *p.* 959.

█ An application of the foregoing principles to the words used by the testator in the creation of the residuary gift "unto Ella Whitfield, my sister, Kate D. Jones, my sister, and Lewis D. Jones, my father, to be divided equally among them to them and their heirs and assigns forever" results in the conclusion that the testator intended the gift to the named persons in severalty, unless a contrary intention can be ascertained from other parts of his will. The defendants contend that such a contrary intent is manifested in other parts of the will and that the true intention of the testator was to make a class gift to the three named individuals. It is first urged that presumably the testator did not intend to die intestate as to any part of his estate. We fully recognize the principle that in the construction of a will there is a presumption against intestacy, particularly where the subject of the gift in question is a component of the residuary estate. *Guarantee Trust Co. v. Catholic Charities,* 141 *N. J. Eq.* 170 (*Ch.* 1948). But this presumption cannot be invoked to justify a revision of the clear language of the will. *Glover v. Reynolds,* 135 *N. J. Eq.* 113 (*Ch.* 1944) ; affirmed, 136 *N. J. Eq.* 116 (*E. & A.* 1945). The court's function is not to make a will for the testator but to construe the will which the testator made, and if the legal effect of his expressed intent is intestacy it will be presumed that he designed that intent since he is presumed to know the law. *Maxwell v. Maxwell,* 122 *N. J. Eq.* 247 (*Ch.* 1937). In the present case the clearly expressed language of the will makes the invoking of the canon of construction against intestacy inappropriate. The canon of construction which disfavors intestacy is not sufficient of itself to turn that into a class gift which would otherwise be held a gift to individuals under the expressed wording of the will and the application of the presumption hereinabove discussed. *Dildine v. Dildine, supra; Clapp, supra,* § 181, *p.* 431.

██ Is there anything in the context of the will then from which an intention of the testator to make a class gift can be ascertained? The defendants say that since the testator demonstrated that he knew how to provide for substitu-

tion in one instance, when providing in his will for his children, his omission of a similar provision in the gift to his sisters and father indicated an intent to give to these legatees as a class with right of survivorship. But this is pure conjecture. Since the testator is presumed to know the law, it must be presumed that he knew how to provide for the right of survivorship as well as how to provide for substitution. If the testator had intended survivorship as an attribute of the estate given he could have expressly so provided. Manifestly he did not do so. It is further contended that since the testator did not alter his will during the 29 years intervening between the date of his father's death in 1906 and his own death in 1935, he intended that the residuary estate would go to his surviving sisters. We find no merit in this argument because the intention of the testator must be determined in the light of the context of the will and the circumstances existing at the time the will was executed. *In re Fox, supra; Blauvelt v. The Citizens Trust Co.*, 3 N. J. 545 (1950); *Clapp, supra*, § 105, *p*. 242. As a rule, events occurring subsequent to the execution of the will cannot be considered in seeking to ascertain the intention of the testator at the time of the will's execution. Moreover, the failure of the testator to alter his will after the death of his father does not lead any more to a conclusion that the testator intended that his surviving sisters were to take the father's share than that the testator's wife should take such share. But it is urged that the testator by giving his wife $5,000 and a life estate in lieu of dower clearly intended to limit her interest in his estate. Assuming this to have been the testator's intention at the time the will was executed, it does not follow that an intent to limit the wife's interest in the estate manifested an intent to create a class gift of the residuary estate to testator's sisters and father. At the time the will was executed disposition was made of the entire estate to persons who were closely related to the testator, and an intention to make a gift of the residue to the testator's sisters and father in severalty with the testator's wife taking the lapsed share of the father is equally

consistent with an intention that the residuary estate was to pass to testator's sisters and father as a class with right of survivorship. Whether the testator may have silently intended to prefer his sisters over his wife in the event of his father's death during the testator's lifetime is pure speculation. A consideration of the entire context of the will discloses nothing from which it can be deduced that the testator intended that his sisters and father should take as a class rather than as individuals or that any right of survivorship among them was intended. In this posture, it must be concluded that the expressed language of the will creating the residuary gift, being here considered, when construed in the light of established principles, there being no contrary intent expressed elsewhere in the will, clearly manifested an intent on the part of the testator that the residuary estate was to pass to his sisters and his father in severalty without any right of survivorship.

It follows that the death of the testator's father prior to that of the testator resulted in a lapse as to one-third of the residuary estate. *Rippel v. King, supra; Page, supra, Vol. 4, § 1421, p. 175.* The lapse of the gift to the testator's father is not provided against by *R. S.* 3 :2–18. As to this part of his estate the testator died intestate, *Rippel v. King, supra; Ward v. Dodd,* 41 *N. J. Eq.* 414 *(Ch.* 1886) ; *Garthwaite's Executor v. Lewis,* 25 *N. J. Eq.* 351 *(Ch.* 1874) ; and the testator's widow, Mabel L. Jones, succeeded thereto pursuant to the statutes of descent and distribution in effect at the date of the testator's death. *R. S.* 3 :3–4; *R. S.* 3 :5–3.

The defendants contend, however, that if the share of Lewis D. Jones in the residuary estate lapsed and became intestate property, because he predeceased the testator, the testator's widow, Mabel L. Jones, nevertheless, is not entitled thereto because she never made any claim thereto during her lifetime but actually disclaimed any interest therein in the inheritance tax report filed by her as executrix of her husband's estate, in which she listed her interest in the estate as being a $5,000 legacy and a life income from the entire

estate, and the interest of each of the decedent's two sisters
as being "½ interest, subject to life estate of Mabel L. Jones."
We find no merit in this contention. The only basis upon
which the widow's interest could be declared forfeit would
be that of estoppel or waiver. The incidents of estoppel or
waiver were not proved. In *Smith v. National Commercial
Title, etc., Co.*, 120 *N. J. L.* 75 (*E. & A.* 1938), it was said,
at *page* 83,

"One of the essential elements of estoppel is that the party who
seeks the benefit of it must have relied upon the representations or
conduct of the other party and thereby have been led into such a course
of conduct that he will now be substantially prejudiced if the other
party be permitted to repudiate his former action or representation.
Waiver is a designation of the act, or of consequences of the act, of
one side only, and it refers to an intentional abandonment or relin-
quishment of a known right."

In the instant case there is no evidence that the defendants
relied upon any representation or conduct of the testator's
widow to their prejudice, hence there is no estoppel. Nor is
there any evidence that the testator's widow was aware of
the existence of her right to a part of the residuary estate.
Consequently there was no "intentional abandonment or re-
linquishment of a known right" and hence there was no
waiver.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices
CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For reversal*—None.